IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


MICHAEL B.,[1]                                              Case No. 3:17-cv-01403-AA
                                                           **OPINION AND ORDER**
            Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,[2]

            Defendant.

_____

AIKEN, Judge:

    Plaintiff Michael B. brings this action pursuant to the Social Security Act, 42 U.S.C. §

405(g), to obtain judicial review of a final decision of the Commissioner of Social Security

("Commissioner"). The Commissioner denied plaintiff's applications for Disability Insurance

---

    [1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

    [2] Nancy A. Berryhill's term as the Acting Commissioner of the Social Security Administration ended on November 17, 2017, and a new Commissioner has not been appointed. The official title of the head of the Social Security Administration is the "Commissioner of Social Security[.]" 42 U.S.C. § 902(a)(1). A "public officer who sues or is sued in an official capacity may be designated by official title rather than by name[.]" Fed. R. Civ. P. 17(d). I therefore refer to defendant only as Commissioner of Social Security.

Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, the Commissioner's decision is reversed and remanded for further proceedings.

## BACKGROUND

In January 2012, plaintiff applied for DIB and SSI. He alleged disability beginning December 31, 2006, due to schizophrenia, bipolar disorder, manic depression, PTSD, visual and auditory problems, anger management problems, migraine headaches, trouble sleeping, and difficulty concentrating. Plaintiff's applications were denied initially and upon reconsideration. On October 17, 2013, plaintiff appeared at a hearing before an ALJ. On October 31, 2013, the ALJ issued a decision finding plaintiff not disabled. After the Appeals Council denied review, plaintiff filed a complaint in this Court.

On June 10, 2016, Judge King reversed and remanded for further proceedings. Judge King determined that the ALJ's decision was not supported by substantial evidence for two reasons. First, Judge King held that the ALJ had discredited plaintiff's subjective symptom testimony without providing the requisite clear, convincing reasons for doing so. In particular, Judge King found that the ALJ had erred by (1) failing to adequately address the medical evidence that plaintiff suffers from hallucinations; (2) failing to consider the possibility that plaintiff's mental health symptoms may wax and wane; and (3) questioning the severity of plaintiff's symptoms because plaintiff has not consistently sought mental health treatment without exploring possible explanations for that lack of treatment, including inability to afford treatment and a possible causal relationship between the mental illness and failure to seek treatment.

Second, Judge King found that the ALJ had violated her duty to develop the record and expressly found that the record was "inadequate to adequately assess [plaintiff's] mental

impairments." Tr. 643. Judge King noted that the ALJ had given "significant weight" to the opinion of Dr. Dooley, a consultative physician, yet had failed to account for the "serious symptoms" implicit in Dr. Dooley's opinion. Tr. 644. Judge King remanded "for further evaluation of [plaintiff's] mental impairments, to include objective testing if necessary to fully assess [plaintiff's] functioning." Tr. 644.

The Appeals Council issued a remand order, and the ALJ convened a second hearing on May 9, 2017. At the hearing, plaintiff's counsel requested a consultative examination, but the ALJ denied that request. On June 1, 2017, the ALJ issued a second decision, again finding plaintiff not disabled. The Appeals Council denied review, and plaintiff now seeks judicial review.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based upon proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (citation and quotation marks omitted). The court must weigh "both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence is subject to more than one interpretation but the Commissioner's decision is rational, the Commissioner must be affirmed because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a)(4); *id.* § 416.920(a)(4). At step one, the ALJ found plaintiff had not engaged in "substantial gainful activity" since the alleged disability onset date. Tr. 572; 20 C.F.R. § 404.1520(a)(4)(i), (b); *id.* § 416.920(a)(4)(i), (b). At step two, the ALJ found plaintiff suffers from the severe impairments of affective disorder and personality disorder. *See* 20 C.F.R. § 404.1520(a)(4)(ii), (c); *id.* § 416.920(a)(4)(ii), (c).

At step three, the ALJ determined plaintiff's impairments, whether considered singly or in combination, did not meet or equal "one of the listed impairments" that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. Tr. 573; 20 C.F.R. § 404.1520(a)(4)(iii), (d); *id.* § 416.920(a)(4)(iii), (d). The ALJ found plaintiff retained the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: he can consistently maintain concentration, persistence, and pace for simple as well as detailed tasks, as long as the detailed tasks are not highly complex (meaning not more than SVP 4); and he should have only occasional, brief, superficial contact with the general public and co-workers.

Tr. 574; *see also* 20 C.F.R. § 404.1520(e); *id.* § 416.920(e).

At step four, the ALJ concluded plaintiff could not perform any of his past work. 20 C.F.R. § 404.1520(a)(4)(iv), (f); *id.* § 416.920(a)(4)(iv). At step five, the ALJ found that plaintiff could perform the jobs of small products assembler, laundry folder, and labeler. 20 C.F.R. § 404.1520(a)(4)(v), (g)(1); *id.* § 416.920(a)(4)(v), (g)(1). Accordingly, the ALJ found plaintiff not disabled and denied his applications for benefits.

## DISCUSSION

Plaintiff's arguments on appeal focus entirely on whether the ALJ adequately followed Judge King's instructions on remand. Specifically, plaintiff argues that the ALJ (1) failed to develop the record when she denied plaintiff's motion for a consultative examination and (2) repeated the error of crediting Dr. Dooley's assessment but reaching an ultimate disability determination inconsistent with that assessment.

In Social Security disability proceedings, the ALJ has an affirmative duty to assist in developing the record. *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001). The duty is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence by the ALJ. *Tonapetyan v. Holder*, 242 F.3d 1144, 1150 (9th Cir. 2001). In his remand opinion and order, Judge King expressly found that the record was inadequate to adequately assess plaintiff's mental impairments and suggested that a new consultative examination might be necessary to fully develop the record.

The only additions to the record following Judge King's remand order were (1) the testimony taken at the hearing on May 9, 2017, and (2) a summary report from the Cooperative Disability Investigations Unit ("CDIU"). On October 12, 2016, shortly after Judge King remanded the case, the Social Security hearings office requested that CDIU conduct a "pretext interview" to investigate suspicion that plaintiff had "attempted to fraudulently obtain SSA

benefits." Tr. 744. Plaintiff did not submit any new treatment records, as his attorney represented that plaintiff "does not . . . currently receive any medical treatment, and there hasn't been any medical treatment in some time." Tr. 601. Plaintiff's counsel requested a consultative examination, but the ALJ denied that request. The ALJ explained that denial by stating that

> there is no reason, in today's world, where we have the Affordable Care Act, where people cannot get—especially people who are of very, very limited means. The Affordable Care Act gives a great deal of coverage.
>
> It is available, and there's really no good reason why someone would not have some medical records, if they, indeed, had medical issues that were on a sufficient level that would require such treatment.

Tr. 601–02. In her written decision, the ALJ reiterated that plaintiff had not sought any medical treatment since the first hearing four years earlier, and noted that "[t]he claimant sought treatment in the past and had the option to access emergency rooms or low-cost health insurance if needed. The file does not contain evidence of a social or intellectual difficulty that would keep him from seeking treatment." Tr. 577.

The ALJ failed to fulfill her duty to adequately develop the record. She concluded that a consultative examination was unnecessary because, in her view, plaintiff's failure to seek medical treatment shows that his impairments are not as severe as he claims. An ALJ cannot draw adverse inferences from failure to seek or pursue regular treatment without first considering the possible reasons for such failure. SSR 16-3p. The ALJ addressed and rejected one such reason: inability to pay. She also stated that she saw no evidence of a "social or intellectual difficulty" that would prevent access to care—a phrase I take to be a reference to, for example, an anxiety disorder that would prevent a person from going out in public or a cognitive disorder that would prevent a person from making and keeping appointments. Tr. 577. But the ALJ failed to engage with the possibility that plaintiff's acknowledged severe impairments—affective

disorder and personality disorder—might be the reason he believes treatment will not help him and does not seek care. Judge King expressly noted the possibility that plaintiff's failure to seek treatment might be a symptom of his personality disorder and cited Ninth Circuit case law for the proposition that "it is a questionable practice to chastise one with a mental health impairment for the exercise of poor judgment in seeking rehabilitation." Tr. 642 (citing *Nguyen v. Chater*, 100 F.3d 1452, 1465 (9th Cir. 1996)).

The ALJ also violated the rule of mandate. *See Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016) (holding that the rule of mandate applies to district court's remand orders in Social Security proceedings). That rule provides that a lower court "that has received the mandate of an appellate court cannot vary or examine that mandate for any purpose other than executing it." *Id.* at 568. The lower court "may . . . decide anything not foreclosed by the mandate" but "commits jurisdictional error if it takes actions that contradict the mandate." *Id.* at (internal quotation marks omitted). Judge King expressly found that the evidence was insufficient to adequately evaluate plaintiff's mental health problems. The ALJ found plaintiff not disabled without developing the medical record any further. If the record in this case before remand was insufficient to make a disability determination, then the record after remand, which had been supplemented only with the NCIU investigation file, was also insufficient; the ALJ took an action that "contradict[ed] the mandate" when she issued a disability decision based on a record Judge King had already deemed insufficiently developed.

In both her opinions, the ALJ discussed evidence throughout the record that plaintiff makes inconsistent statements about his symptoms, work history, education, and a variety of other matters. The ALJ noted that the evidence from the CDIU report and at the second hearing provided even more evidence of malingering. Plaintiff admitted at the hearing that he has falsely

stated that he has an engineering degree and worked at Chrysler in an attempt to impress people. And although plaintiff testified that he works only two to three hours a week, plaintiff told CDIU workers that in his current work at a marina he has engaged in substantial projects that would require far more hours of work activity, such as repainting a 100-foot-long bridge over the course of just a couple of weeks. Plaintiff also initially testified that he had not done any other work since 2013, but later admitted that he had worked up to twenty hours per week as a gas station attendant from 2014 to 2016.

Such inconsistencies may, of course, be a valid reason for the ALJ to give less weight to plaintiff's description of his symptoms. But under the circumstances presented here, they are not a valid reason to deny plaintiff's request for a consultative examination—particularly because Judge King expressly noted that it was not clear to him, "and should be the subject of further exploration[,] whether [plaintiff's] statements about his engineering degree and work at Chrysler (and similar statements) are symptoms of his impairment or appropriate credibility considerations." Tr. 641.

The Commissioner correctly points out that Judge King merely raised the possibility of ordering a consultative examination, and that there was no clear directive to order such a report. That makes sense. Judge King did not know what the other evidence on remand would be. Had there been several years' worth of treating physician records on remand, a consultative examination might well have been redundant. Alternatively, if evidence had emerged that plaintiff has been working full-time at the substantial gainful activity level, there would be no need to order a consultative examination. But the only reasonable reading of Judge King's remand order is that, in the absence of evidence mooting plaintiff's disability claim or new medical evidence pertinent to plaintiff's medical conditions, the ALJ should develop the medical

record *in some way*—by ordering a full consultative examination, asking Dr. Dooley to elaborate on his findings, or otherwise. The ALJ's reliance on new evidence of inconsistence statements and failure to seek medical treatment, without engaging with the possibility that the statements and failure are themselves caused by plaintiff's impairments, does not satisfy the spirit or the letter of Judge King's order to further develop the record.

The ALJ also erred in her treatment of Dr. Dooley's opinion. In her first decision, the ALJ gave Dr. Dooley's opinion "significant weight." Tr. 643. But Judge King found that Dr. Dooley's assessment of borderline IQ, poor social judgment, a tendency toward social isolation, lack of interest in looking for work, and noncompliance with doctor's orders could not be "square[d]" with the ALJ's conclusion that plaintiff was capable of working. Tr. 644. On remand, the ALJ again gave Dr. Dooley's opinion "significant weight" and again found plaintiff not disabled. Tr. 584. The section devoted to Dr. Dooley's opinion in the ALJ's second decision contains several paragraphs that are substantially identical to paragraphs in the ALJ's first decision. The only new material primarily addresses evidence of plaintiff's inconsistent statements:

> Dr. Dooley's examination shows inconsistencies in the claimant's allegations. He diagnosed schizophrenia, but only by the claimant's report. The claimant showed good concentration, without significant distractibility. Dr. Dooley wrote, 'There was no evidence of psychomotor retardation. He was forthright and cooperative throughout the course of the interview process, and appeared to be able to follow questions and answer.' The use of 'forthright and cooperative' has two interpretation: one, that the claimant is telling the truth and following instructions; or two, that the claimant is able to follow instructions because there is no evidence of paranoia, hallucinations, or delusions. Dr. Dooley wrote that the claimant heard voices, but Dr. Dooley did not mention any observed responses to internal stimuli. Because Dr. Dooley questioned the claimant's story about attending M.I.T., I doubt that he used 'forthright' to mean truthfulness in all areas. The second explanation is more consistent with the record. Additionally, the claimant's testimony about 'trying to impress people' saying he was once a Chrysler engineer confirms Dr. Dooley's suspicion that the M.I.T. story was a fabrication. Dr. Dooley said the claimant's personality disorder was the main

reason he avoided medical treatment and was not looking for a job. Dr. Dooley noted that the claimant was capable of tasks such as making models all day long.

Tr. 584–84.

That new discussion does not resolve the conflict Judge King identified between giving Dr. Dooley's opinion "significant weight" and finding plaintiff was capable of working full-time. It is plain from Dr. Dooley's opinion that he was skeptical of plaintiff's claims, in particular the claims about education and work history. Notwithstanding that skepticism, however, Dr. Dooley opined that plaintiff has serious symptoms and stated that plaintiff's personality disorder was the primary reason he was not seeking medical treatment and was not looking for a job. The ALJ did not explain how those opinions—which the ALJ credited—could be reconciled with the determination that plaintiff is capable of working full-time.

In sum, Judge King found that the record before remand was insufficient to permit adequate evaluation of plaintiff's mental impairments and ordered further development of the record. The ALJ denied plaintiff's request to supplement the record with a consultative examination and found plaintiff not disabled without considering any new medical evidence. And, despite Judge King's direct instruction and the credited opinion of Dr. Dooley, the ALJ failed to address the possibility the plaintiff's failure to seek medical care, failure to look for full-time work, and widespread inconsistent statements may be symptoms of his mental health impairments rather than evidence that he is fraudulently attempting to obtain benefits. The ALJ's decision does not rest on substantial evidence and must be reversed.

Plaintiff urges me to reverse and remand for an immediate award of benefits, but the record does not permit such an outcome in this case. Before remand, Judge King found that the record was inadequate to assess plaintiff's mental impairments. The record now contains no new medical evidence enable that assessment; it is, therefore, the law of the case that the record must

be developed further before a final disability decision can be reached. *See Stacy*, 825 F.3d at 567 ("The law of the case doctrine generally prohibits a court from considering an issues that has already been decided by that same court or a higher court in the same case."). Moreover, as plaintiff's attorney conceded, Dr. Dooley's evaluation, the most complete medical opinion in the record, "did not really give clear functional limitations." Tr. 601. Thus, that opinion, even if credited as true, would not establish disability—a necessary condition of the credit-as-true rule. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Finally, the record as a whole here creates serious doubt as to whether the plaintiff is disabled. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014). It may be that plaintiff's failure to seek treatment and inconsistent statements are symptoms of his impairments, and it was error for the ALJ to fail to consider that possibility. But the absence of treatment in the record is striking and plaintiff's inconsistent statements are widespread and substantial. In the absence of a medical opinion that fully engages with the potential relationship between plaintiff's malingering, resistance to treatment, and mental impairments, I decline to remand for an immediate award of benefits.

## CONCLUSION

The Commissioner's decision is REVERSED AND REMANDED for further proceedings. On remand, the ALJ shall order a consultative evaluation with objective testing to address the relationship, if any, between plaintiff's severe impairments and his inconsistent statements, failure to seek mental health treatment, and ability to perform full-time work.

IT IS SO ORDERED.

Dated this ⁣‌ day of August 2018.

Ann Aiken
United States District Judge